Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WURTH ADDITIVE GROUP, INC.,** | |
| Plaintiff, | Civil Action No.: 24-7695 (ES) (LDW) |
| v. | **OPINION AND ORDER** |
| **PARADIGM MANUFACTURING,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Wurth Additive Group's ("Würth") motion for default judgment against Defendant Paradigm Manufacturing ("Paradigm"). (D.E. No. 13). The motion is unopposed. The Court has carefully considered Würth's submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **DENIES** Würth's motion *without prejudice*.

### I.   BACKGROUND[1]

"Würth rents industrial equipment to customers in the additive manufacturing industry." (Compl. ¶ 6). "Paradigm is a provider of industrial 3D printing services." (*Id.* ¶ 7). "In 2022, Würth and Paradigm entered into three separate agreements for the lease of industrial 3-D printing equipment and related products from Würth to Paradigm." (*Id.* ¶ 8). Those agreements were as follows:

> On or about March 28, 2022, Würth and Paradigm executed the first of these agreements, entitled "Equipment Lease Agreement" and

---

[1] The Court has drawn the background described herein from Würth's Complaint, (D.E. No. 1 ("Compl.")), as it must accept Plaintiff's factual allegations—other than those related to damages—as true by virtue of Paradigm's default. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 820 (D.N.J. 2021).

> identified as Contract No. 100421 (the "March 28 Agreement"). The March 28 Agreement specified that Würth would lease a Rapidshape i100 package to Paradigm, for the period of June 1, 2022, to May 31, 2023, at a rate of $13,007.67 per month . . .
>
> On or about June 6, 2022, Würth and Paradigm executed a second Equipment Lease Agreement identified as Contract No. 100427 (the "June 6 Agreement"). The June 6 Agreement specified that Würth would lease three Rapidshape i50 packages to Paradigm, for the period of July 1, 2022, to September 30, 2023, at a rate of $17,761.03 per month (beginning in the fourth month of the lease) . . .
>
> On or about June 15, 2022, Würth and Paradigm executed a third Equipment Lease Agreement identified as Contract No. 100428 (the "June 15 Agreement"). The June 15 Agreement specified that Würth would lease three Rapidshape i30 packages to Paradigm, for the period of June 15, 2022, to September 15, 2023, at a rate of $8,190.00 per month (beginning on September 15, 2022).

(*Id.* ¶¶ 9–11). Würth attached copies of the March 28 Agreement, June 6 Agreement, and June 15 Agreement (collectively the "Equipment Lease Agreements") to its Complaint as Exhibits A, B, and C, respectively. (D.E. Nos. 1-3, 1-4 & 1-5). "Würth also provided Paradigm with various printer consumables and other materials and equipment" in connection with Equipment Lease Agreements. (*Id.* ¶ 12). Würth delivered the leased equipment and other goods to Paradigm's location in Phoenix, Arizona. (*Id.* ¶ 13).

Würth alleges that Paradigm began to miss payments owed under the Equipment Lease Agreements "beginning in August of 2022." (*Id.* ¶ 14). As of July 11, 2024 (the date Würth filed the Complaint), Paradigm owed "$186,418.63 in outstanding lease payments, plus an additional amount in late[] charges . . . under [those] Agreements." (*Id.*). Würth further alleges that "Paradigm kept possession of the [leased equipment] until May 7, 2024," at which time Paradigm tendered that equipment to Würth's "third-party logistics vendor." (*Id.* ¶ 15). Based on those allegations, Würth has asserted three causes of action for breach of contract. Each cause of action

covers one of the Equipment Lease Agreements and asserts that Paradigm breached its contractual obligations by: (i) missing payments; (ii) keeping the leased equipment beyond the contractual "termination date"; and (iii) diminishing the value of that equipment. (*Id.* ¶¶ 16–33).

## II. PROCEDURAL HISTORY

Würth commenced this action by filing a Complaint on July 11, 2024. (*See generally id.*). The record reflects that Würth served Paradigm, via personal service on its registered agent, on August 29, 2024. (D.E. Nos. 5 & 6). Pursuant to Federal Rule of Civil Procedure 12(a), Paradigm was therefore required to respond to the Complaint on or before September 19, 2024. It did not do so. Indeed, Paradigm had not appeared in the case by December 30, 2024, when Würth requested that the Clerk of the Court enter default against it. (D.E. No. 8). The Clerk entered default against Paradigm the following day.

On May 15, 2025, Würth filed the instant motion for default judgment. To date, Paradigm has not responded to the motion or otherwise participated in this case.

## III. LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting such relief.

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter

3

jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgement." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (citation modified).

## IV. DISCUSSION

### A. Jurisdiction

#### i. Subject Matter Jurisdiction

The Court is satisfied that it has subject matter jurisdiction over this matter. District courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and that are between citizens of different States. 28 U.S.C. § 1332(a). A corporation is deemed a citizen of every State where it is incorporated and of the State of its principal place of business. *Id.* § 1332(c). A limited liability company maintains the citizenship of each of its members. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). The citizenship of a natural person is determined by the state in which the person is domiciled. *Id.* at 104.

The record indicates that Würth "is a corporation organized under the laws of Delaware with its principal place of business located in Indiana." (Compl. ¶ 2). Würth is therefore a citizen of both Delaware and Indiana for diversity purposes. The record further reflects that Paradigm is a limited liability company, and that each of its three members resides in Phoenix, Arizona. (*Id.* ¶ 3). Paradigm is therefore a citizen of Arizona and, in turn, the Court finds that there is complete diversity of citizenship between the parties.

Würth alleges that Paradigm owes $186,418.63 under the Equipment Lease Agreements, as well as late fees and prejudgment interest. (*Id.* ¶¶ 16–33). Given that there is complete diversity of citizenship between the parties, and that the amount in controversy exceeds $75,000, the Court concludes that it has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

      ii.      **Personal Jurisdiction**

The Court next examines whether it may exercise personal jurisdiction over Paradigm. Effective service of process is the mechanism by which the court itself obtains personal jurisdiction over a defendant. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant."); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 382 (3d Cir. 2022) ("[T]o determine if personal jurisdiction is proper in a traditional in personam suit we begin with the source of law authorizing the service of process whereby plaintiffs seek to establish personal jurisdiction, which in federal courts is Rule 4."). Here, the record reflects that Würth personally served Paradigm's registered agent with copies of the Summons and Complaint. (D.E. Nos. 5 & 6). The Court next examines whether it may exercise personal jurisdiction over Paradigm in accordance with due process requirements. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380 (3d Cir. 2022) ("At the

...
...

highest level, the potential outer limits of the personal jurisdictional authority of a federal court are defined by the Due Process Clause of the Fifth Amendment.").

In both its Complaint and Motion for Default Judgment, Würth suggests that Paradigm has consented via contract to personal jurisdiction in the District of New Jersey. (Compl. ¶ 5 & D.E. No. 13-1 ("Mov. Br.") at 3–4). Indeed, "[p]arties to a contract are free to consent in advance to personal jurisdiction in a foreign court through the use of consent-to-jurisdiction clauses, also known as forum-selection clauses." *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 469 (D.N.J. 1998) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10–11 (1972)). Put another way, "[a] forum selection clause may act as consent to personal jurisdiction, thus obviating the need for a personal jurisdiction analysis." *Harfouche v. Wehbe*, 950 F. Supp. 2d 766, 770 (D.N.J. 2013) (collecting cases). Würth argues that Section 25 of each of the Equipment Lease Agreements provides the relevant language. (Mov. Br. at 4).

That provision states, however: "**Lessor** consents and submits to the exclusive jurisdiction of, the state or federal courts of competent jurisdiction in New Jersey . . ." (*See* D.E. No. 1-3 at § 25; D.E. No. 1-4 at § 25 & D.E. No. 1-5 at § 25 (emphasis added)). The Equipment Lease Agreements define "Lessor" as Würth. (D.E. No. 1-3 at 1; D.E. No. 1-4 at 1 & D.E. No. 1-5 at 1). Section 25 does not contain a similar consent from Paradigm—the "Lessee," as defined in the Equipment Lease Agreements. (D.E. No. 1-3 at 1 & § 25; D.E. No. 1-4 at 1 & § 25 & D.E. No. 1-5 at 1 & § 25). While the circumstances of the parties' agreements suggest that the language in Section 25 may be a typographical error, and that Würth may have intended to bind Paradigm to this forum, the Court must enforce the provision as written. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 67 (3d Cir. 2018) ("We interpret a forum selection clause in accordance with its plain meaning."). Thus, though the record reflects that Würth has consented

6

to personal jurisdiction in this District, nothing suggests that Paradigm has done so.[2] As Würth has not identified any basis for personal jurisdiction over Paradigm outside of the Equipment Lease Agreements' respective forum selection clauses, it has not established its entitlement to default judgment. The Court need not, therefore, conduct the balance of the default judgment analysis (i.e., evaluating the sufficiency of service under the Federal Rules of Civil Procedure, examining whether Würth has established a sufficient cause of action, analyzing the propriety of a final judgment by default, and determining the proper measure of damages).

Absent a forum selection clause that binds Paradigm, it is unclear how that entity might be subject to personal jurisdiction in New Jersey. The Court therefore requires additional information from Würth. Specifically, on or before January 16, 2026, Würth shall file a letter advising how it intends to move forward in this action (e.g., by making appropriate filings establishing an alternative basis for personal jurisdiction or by seeking transfer to the United States District Court for the District of Arizona).

V.    **CONCLUSION**

Based on the foregoing, it is on this 30th day of December, 2025,

**ORDERED** that Würth's motion for default judgment, (D.E. No. 13), is **DENIED** *without prejudice*; and it is further

**ORDERED** that, on or before January 16, 2026, Würth shall file a letter advising how it intends to proceed in this action.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

Cc:    Hon. Leda D. Wettre, U.S.M.J.

---

[2]    The Court does ***not*** suggest that Würth or its counsel intended to mislead the Court in connection with the motion for default judgment.